# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (AT CINCINNATI)

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually, and as the representatives of a class of similarly-situated persons, | Civil Action No.: 1:17-cv-225 |
| Plaintiff, | Judge: |
| v. | **CLASS ACTION COMPLAINT** |
| THE MASSACHUSETTS MEDICAL SOCIETY and JOHN DOES 1-5, | |
| Defendants. | |

Plaintiff Physicians Healthsource, Inc. ("Physicians Healthsource") brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Physicians Healthsource or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendant The Massachusetts Medical Society ("MMS") and John Does 1-5:

## PRELIMINARY STATEMENT

1. The Telephone Consumer Protection Act ("TCPA"), which was modified and renamed the Junk Fax Prevention Act ("JFPA") in 2005, is codified at 47 U.S.C. § 227. Under the JFPA, it is unlawful to send an unsolicited advertisement to someone's fax machine. The JFPA allows private rights of action and provides statutory damages of $500.00 per violation.

2. MMS sent an unsolicited advertisement to Physicians Healthsource on March 13, 2017 ("the 3/13 Fax Ad"). A copy of the 3/13 Fax Ad is attached hereto as Exhibit A. The 3/13 Fax Ad promotes the commercial availability and/or quality of MMS's goods or services.

3. The receipt of an unsolicited advertisement via facsimile (or "junk fax") causes damage to the recipient. A junk fax uses the office supplies of the recipient such as paper, toner, and the fax machine itself. A junk fax also ties up the phone line and the fax machine of the recipient, thereby precluding their use for legitimate, authorized facsimiles and other business. Finally, a junk fax wastes the recipient's time in reviewing and discarding unwanted solicitations.

4. Based on information, belief, and the appearance of the 3/13 Fax Ad itself, MMS also sent the 3/13 Fax Ad to numerous other persons via their respective fax numbers/fax machines. MMS will likely continue to send such advertisements via facsimile absent an injunction or other action prohibiting such conduct.

5. The claims of Physicians Healthsource and the other recipients of the 3/13 Fax Ad are all based on the same legal theory; *i.e.,* violations of the JFPA. This action seeks, among other items of damages, the following relief expressly authorized by the JFPA: (i) an injunction prohibiting MMS (and its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with MMS) from sending more advertisements to Physicians Healthsource via facsimile; (ii) statutory damages, and (iii) treble damages.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as the JFPA is a federal statute and, therefore, gives rise to federal question jurisdiction.

7. This Court has personal jurisdiction over MMS because MMS transacted business within this judicial district, made contracts within this judicial district, and/or committed tortious acts within this judicial district.

2

8. This Court has venue under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

9. Physicians Healthsource is an Ohio corporation, and it operates a chiropractic clinic located at 3328 Westbourne Drive in Cincinnati, Ohio 45248.

10. MMS is a Massachusetts corporation, and its principal place of business is located at 860 Winter Street, Waltham Woods Corporate Center in Waltham, Massachusetts 02451.

11. MMS produces and sells continuing education materials for the medical industry.

12. John Does 1-10 assisted MMS in its facsimile advertising activities by providing a list of fax numbers, transmitting the 3/13 Fax Ad, providing advice or assistance on the content of the 3/13 Fax Ad, *etc.* The identity of the John Doe defendants is not presently known but will be identified through discovery.

## FACTS

13. On March 13, 2017, MMS used a telephone facsimile machine, computer, or other device to send a facsimile ("the 3/13 Fax Ad") to Physicians Healthsource. A copy of the 3/13 Fax Ad is attached hereto as Exhibit A.

14. The 3/13 Fax Ad touts the commercial availability and quality of NEJM Knowledge+.

15. NEJM Knowledge+ is a product of NEJM Group, which is a division of MMS.

16. On information and belief, MMS receive some or all of the revenues from the sale of NEJM Knowledge+. Likewise, MMS profits and benefits from the sale of NEJM Knowledge+.

3

17. Physicians Healthsource did not give prior express invitation or permission to MMS to transmit the 3/13 Fax Ad to Physicians Healthsource via its office facsimile machine.

18. On information and belief, MMS faxed the same and other unsolicited facsimiles to Physicians Healthsource and at least forty other recipients or sent the same and other advertisements by fax without first receiving the recipients' express invitation or permission and/or without having an established business relationship as defined by the JFPA and its regulations.

19. There is no reasonable means for Physicians Healthsource (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the communications their owners desire to receive.

## CLASS ACTION ALLEGATIONS

20. In accordance with Fed. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Physicians Healthsource brings this class action pursuant to the JFPA on behalf of the following classes of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of MMS, (3) from whom MMS did not obtain prior express invitation or permission to send advertisements via facsimile, or (4) with whom MMS did not have an established business relationship, or (5) where the fax advertisements do not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii).

Physicians Healthsource seeks to certify a class that includes but is not limited to the 3/13 Fax Ad and reserves the right to amend the class definition upon completion of class certification discovery.

4

18. <u>Numerosity</u>: Advertisements, including those transmitted via facsimile, are typically broadcast to hundreds if not thousands of persons. Based on information, belief, and its general appearance, the 3/13 Fax Ad was sent to over forty persons. The joinder of such a large group of persons in a single lawsuit would be impracticable.

19. <u>Commonality</u>: Common questions of law and fact apply to the claims of the putative class members. These include the following:

> (a) Whether the 3/13 Fax Ad constitutes an "unsolicited advertisement" within the meaning of the JFPA;
>
> (b) Whether the opt-out notice on the 3/13 Fax Ad complies with the requirements of the JFPA;
>
> (c) Whether MMS violated the JFPA and the regulations promulgated thereunder with regard to the 3/13 Fax Ad; and
>
> (d) Whether MMS sent the 3/13 Fax Ad intentionally, knowingly, or willfully.

20. <u>Typicality</u>: Physicians Healthsource claim is typical of the claims of the putative class members. Physicians Healthsource is asserting the same claim under the same federal statute as the other members of the putative class. Physicians Healthsource is also seeking the same relief for itself and the other members of the putative class.

21. <u>Adequacy</u>: Physicians Healthsource will fairly and adequately represent the interests of the putative class members. Physicians Healthsource has no interests in conflict with the putative class members, has the resources and inclination to prosecute this action to completion, and has retained experienced counsel to assist it in doing so.

22. <u>Predominance</u>: The questions of law and fact common to the putative class members predominate over any questions affecting only individual members because:

5

(a) Physicians Healthsource's claim depends on the same factual and legal issues as that of the putative class members;

(b) the evidence supporting MMS's likely defenses will come solely from MMS's own records and will not require any information or inquiries from individual class members;

(c) the damages for all putative class members are set by statute and will, therefore, be the same for each and every member of the putative class; and

(d) the identity of the putative class members can be readily ascertained from MMS or its agents' computer records, phone records, or other business records.

23. <u>Superiority</u>: A class action would be superior to individual actions by the putative class members for the following reasons:

(a) the damages suffered by any one class member are too low to justify a stand-alone lawsuit;

(b) the JFPA contains no provision for awarding attorney fees. As such, individual claimants would, as a practical matter, have to proceed *pro se* against a large, sophisticated defendant;

(c) many of the putative class members are legal entities that would not be permitted to proceed in court *pro se*; and

(d) the evidence concerning each of putative class member's claims is so similar that the adjudication of each on an individual basis would be repetitive, inefficient, and wasteful.

## **VIOLATION OF THE JUNK FAX PREVENTION ACT**

24. Under the JFPA, it is "unlawful for any person to . . . use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. 227(b)(1)(C).

25. Under the JFPA, "the term "unsolicited advertisement' means any material

advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

26. **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the JFPA, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

    (a)    A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

    (b)    A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

    (c)    A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

    (d)    The opt-out language must be conspicuous.

The requirement of (a) above is incorporated from § (b)(D)(ii) of the JFPA. The requirement of (b) above is incorporated from § (b)(D)(ii) of the JFPA and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules

and regulations took effect on August 1, 2006). The requirements of (c) above are contained in § (b)(2)(E) of the JFPA and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of the telephone lines and fax machines giving them the right, and means, to stop unwanted faxed advertisements.

27.     **The Fax**. On March 13, 2017, MMS sent an advertisement via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Physicians Healthsource and members of the proposed class. These faxes constituted advertisements under the JFPA.  MMS failed to comply with the Opt-Out Requirements in connection with these faxes.  These faxes were transmitted to persons or entities without their prior express invitation or permission.  By virtue thereof, MMS violated the JFPA and the regulations promulgated thereunder by sending these faxes via facsimile transmission to Physicians Healthsource and members of the Class.  Physicians Healthsource seeks to certify a class which includes these faxes and all others sent during the four years prior to the filing of this case through the present.

28.     **MMS' Other Violations.**  Physicians Healthsource is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, MMS has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the proposed class other faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express invitation or permission.  By virtue thereof, MMS violated the JFPA.  Physicians Healthsource is informed and believes, and

upon such information and belief avers, that MMS may be continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

29. The JFPA provides a private right of action to bring this action on behalf of Physicians Healthsource and the proposed class to redress MMS' violations of the JFPA. The JFPA also provides for statutory damages. 47 U.S.C. § 227(b)(3). The JFPA also provides for injunctive relief. *Id.*

30. The JFPA is a strict liability statute, so MMS are liable to Physicians Healthsource and the other class members even if their actions were only negligent.

31. The MMS knew or should have known that (a) Physicians Healthsource and the other class members had not given prior express invitation or permission for MMS or anybody else to fax advertisements about MMS' products, goods, or services; (b) Physicians Healthsource and the other class members did not have an established business relationship with MMS; (c) MMS transmitted advertisements; (d) MMS' faxes did not contain the required Opt-Out Notice; and (e) MMS' transmission of advertisements that did not contain the required opt-out notice or were sent without prior express invitation or permission was unlawful.

32. MMS' actions caused damage to Physicians Healthsource and the other class members. Receiving MMS' junk faxes caused Physicians Healthsource and the other recipients to lose paper and toner consumed in the printing of these faxes. Moreover, MMS faxes used Physicians Healthsource's and the other class members' telephone lines and fax machines. MMS' faxes cost Physicians Healthsource and the other class members time, as Physicians Healthsource and the other class members and their employees wasted their time receiving, reviewing, and routing MMS' unauthorized faxes. That time otherwise would have been spent

on Physicians Healthsource's and the other class members' business activities.  MMS' faxes unlawfully interrupted Physicians Healthsource's and other class members' privacy interests in being left alone.

WHEREFORE, Plaintiff Physicians Healthsource, Inc., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant The Massachusetts Medical Society and John Does 1-5 as follows:

(1) that the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Physicians Healthsource as the representative of the class, and appoint Physicians Healthsource's counsel as counsel for the class;

(2) that the Court award actual or statutory damages to Physicians Healthsource and the other class members for each violation of the JFPA by MMS;

(3) that the Court enjoin MMS from additional violations of the JFPA; and

(4) that the Court award pre-judgment interest, post-judgment interest, attorney fees, treble damages, costs, and such other relief as may be just and proper.

Respectfully submitted,

PHYSICIANS HEALTHSOURCE, INC.,
individually and as the representative of a class of similarly-situated persons,

*/s/ Matthew E. Stubbs*
GEORGE D. JONSON (0027124)
MATTHEW E. STUBBS (0066722)
MONTGOMERY, RENNIE & JONSON
36 E. Seventh Street, Suite 2100
Cincinnati, Ohio  45202
(513) 241-4722
(513) 241-8775 (fax)
Email:  gjonson@mrjlaw.com
            mstubbs@mrjlaw.com

*Counsel for Physicians Healthsource, Inc.*